IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 6, 2016 Session

## KENNETH M. SPIRES ET AL. v. HALEY REECE SIMPSON ET AL.

**Appeal from the Circuit Court for Monroe County**
**No. V103595     J. Michael Sharp, Judge**

_____

### No. E2015-00697-COA-R3-CV-FILED-APRIL 26, 2016

_____

The surviving spouse in this wrongful death action appeals the trial court's dismissal of him as a plaintiff. The decedent and surviving spouse had one child together, who was eighteen months old at the time of the decedent's fatal automobile accident in October 2010. The decedent and surviving spouse were living apart, and the child had been residing solely with the decedent. On November 18, 2010, the surviving spouse, acting on behalf of the decedent, the child, and himself, filed the instant action in the Monroe County Circuit Court ("trial court") against the seventeen-year-old driver of the other vehicle involved in the accident and her parents, who were the owners of the vehicle. Also in November 2010, the Monroe County Juvenile Court granted custody of the child to the maternal grandmother. Upon a subsequent petition filed by the maternal grandmother and maternal uncle in the Blount County Chancery Court, the surviving spouse's parental rights to the child were terminated and a decree of adoption was granted to the maternal uncle on August 8, 2012. The child's maternal grandmother and adoptive father subsequently filed successive motions to intervene in this action on behalf ot the child. Upon announcement of an agreement as to the settlement amount offered by the defendants' insurance company, the trial court entered an agreed order awarding a $100,000.00 judgment against the defendants.[1] Following a bench trial regarding the remaining issues, the court found that pursuant to Tennessee Code Annotated § 20-5-107(b), the surviving spouse was statutorily disqualified from commencing and maintaining this action or collecting any portion of a settlement because he owed outstanding child support arrearages on behalf of children born to four women other than the decedent. We determine that although Tennessee Code Annotated § 20-5-107(b) operates to prohibit the surviving spouse's recovery of his one-half of the settlement until his child support obligations are paid, it does not operate to disqualify him from commencing and maintaining this wrongful death action. We therefore reverse the trial court's dismissal of the surviving spouse as a plaintiff and the court's substitution of the

[1] The defendants are not parties to this appeal.

adoptive father as an intervening plaintiff. We remand for distribution of the wrongful death settlement proceeds, one-half toward payment of the surviving spouse's child support arrearages with interest, pursuant to Tennessee Code Annotated § 20-5-107(b), and one-half to the minor child in trust with the adoptive father as trustee. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Timothy A. Roberto and Ralph Brown, Knoxville, Tennessee, for the appellant, Kenneth M. Spires, o/b/o Charity Felicia Spires, deceased; Kenneth M. Spires, individually; and o/b/o Uriah T.S.[H.].

John W. Cleveland, Sr., Sweetwater, Tennessee, for the appellee, Captain Dana Trent Hensley, Jr., M.D., f/b/o Uriah T.S.[H.].

**OPINION**

I. Factual and Procedural Background

This is a wrongful death action concerning the tragic death of Charity Felicia Spires ("the Decedent") as the result of an automobile accident occurring on October 1, 2010. The Decedent was fatally injured when her vehicle collided with a vehicle driven by co-defendant Haley Reece Simpson. At the time of her death, the Decedent was married to the original plaintiff, Kenneth M. Spires, and they had one child together, Uriah T.S.[H.] ("the Child"), who was eighteen months old when his mother died.

On November 18, 2010, Mr. Spires filed a complaint in the trial court against Haley Reece Simpson and her parents, co-defendants Thomas D. Simpson and Scarlett Simpson, (collectively, "the Simpsons"). Alleging that the Simpsons had caused the wrongful death of his wife, Mr. Spires sought damages on behalf of the Decedent, the Child, and himself. Meanwhile, following a contested hearing in November 2010, the Juvenile Court awarded custody of the Child to the Decedent's mother, Constance Ogle, who was also the administrator of the Decedent's estate.

On December 20, 2010, the Simpsons filed an answer to Mr. Spires's instant complaint, denying liability for the Decedent's death. Ms. Ogle subsequently filed a motion on March 22, 2012, requesting permission to intervene as a plaintiff on behalf of

the Decedent and the Child, appointment as guardian for the Child, and dismissal of Mr. Spires from the action. In support of her motion to dismiss Mr. Spires, Ms. Ogle alleged that he had abandoned the Decedent on April 12, 2009, had not contributed to the Child's support since abandoning the Decedent, and owed outstanding child support arrearages to four women other than the Decedent by whom he had fathered children.

On March 13, 2012, Ms. Ogle and the Child's maternal uncle, Captain Dana Trent Hensley, Jr., M.D., filed in the Blount County Chancery Court a petition to terminate Mr. Spires's parental rights to the Child and adopt the Child. Following a hearing at which Mr. Spires did not appear, the Chancery Court entered a default judgment on August 8, 2012, terminating Mr. Spires's parental rights to the Child upon finding clear and convincing evidence of the statutory grounds that Mr. Spires had abandoned the Child through failing to visit or support the Child during the four months preceding the filing of the termination petition and that termination of parental rights was in the best interest of the Child. *See* Tenn. Code Ann. §§ 36-1-102(1)(A), 36-1-113 (Supp. 2015). The Chancery Court concomitantly entered a final decree of adoption, granting Capt. Hensley's petition to adopt the Child.

On November 21, 2013, Mr. Spires filed a "Motion to Dismiss Interven[o]r as a Party for Failure to Prosecute and Allow First Party to Prosecute Case," alleging that the case had come to a "standstill due to the non-response of the Interven[o]r." Mr. Spires stated in this motion that during a hearing conducted on April 19, 2012, he had agreed to Ms. Ogle's request that she be allowed to join as an intervening plaintiff. According to Mr. Spires's motion, a proposed order to this effect drafted by Mr. Spires's counsel was not submitted to the trial court due to a lack of response from Ms. Ogle's counsel.

On March 24, 2014, Ms. Ogle and Capt. Hensley jointly filed a response to Mr. Spires's motion, concomitant with a motion to dismiss Mr. Spires as a plaintiff and allow Capt. Hensley to join the action as a second intervening plaintiff on behalf of the Child. In support of their motion to dismiss Mr. Spires, Ms. Ogle and Capt. Henley asserted that Mr. Spires was statutorily disqualified, by operation of Tennessee Code Annotated § 20-5-107(b), from commencing a wrongful death action due to the outstanding child support arrearages he owed at the time of the Decedent's death. During the bench trial, conducted on June 3, 2014, the parties stipulated that Mr. Spires owed a total of $71,932.86 in child support arrearages at the time of trial, including $15,945.24 in the matter of *Coleman v. Spires*; $27,590.29 in the matter of *Rush v. Spires*; $14,865.44 in the matter of *Vaulton v. Spires*; and $13,531.89 in the matter of *Morgan v. Spires*.

At the close of trial, the court found that the wrongful death claim against the Simpsons was resolved by the parties' announced agreement that the Simpsons' automobile insurance carrier, Tennessee Farmers Mutual Insurance Company

("Tennessee Farmers"), would pay the policy limit of $100,000.00 in damages to the plaintiffs. The court subsequently entered an "Agreed Final Judgment" relating to the Simpsons on June 30, 2014, ordering Tennessee Farmers to pay $100,000.00 to the trial court clerk's office pending further court order. *See* Tenn. R. Civ. P. 67.01 (providing for the deposit of a money judgment with the trial court). All plaintiffs further agreed to waive the right to appeal the judgment as to the Simpsons. The court thereby dismissed the Simpsons from this action with prejudice. Tennessee Farmers subsequently deposited a $100,000.00 check, dated June 5, 2014, with the trial court clerk.

The trial court took under advisement the remaining issues of the status of the respective plaintiffs and a request for attorney's fees submitted by Mr. Spires. On March 12, 2015, the trial court entered a final judgment, *inter alia*, dismissing Mr. Spires as a plaintiff upon finding that he was statutorily disqualified from commencing or recovering from a wrongful death action due to the outstanding child support arrearages he owed at the time he filed the action. The court also denied Mr. Spires's request for attorney's fees.[2] The court substituted Capt. Hensley as an intervening plaintiff, noting that Capt. Hensley had taken the place of Ms. Ogle in acting on behalf of the Child.[3] Mr. Spires timely appealed.

## II. Issues Presented

Mr. Spires presents two issues for our review, which we restate as follows:

1. Whether the trial court erred by finding that Mr. Spires was statutorily disqualified, pursuant to Tennessee Code Annotated § 20-5-107(b), from commencing a wrongful death action as the surviving spouse of the decedent because of the child support arrearages he owed at the time he filed this action.

2. Whether Capt. Hensley has the right to pursue this action as an intervening plaintiff acting on behalf of the minor child.

Capt. Hensley presents an additional issue, which we have restated slightly as follows:

3. Whether Mr. Spires is entitled to participate in the settlement tendered by Tennessee Farmers on behalf of the Simpsons.

---

[2] The issue of attorney's fees has not been raised on appeal.

[3] Ms. Ogle is not a party to this appeal.

4

III.  Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

Our Supreme Court has summarized the principles involved in statutory construction as follows:

> When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998). Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at

the time the legislation passed. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995).

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009).

## IV. Surviving Spouse's Right to Commence and Maintain Wrongful Death Action

Mr. Spires contends that as the Decedent's surviving spouse, he was the proper plaintiff to commence this wrongful death action and that the trial court erred by finding him to be disqualified. Capt. Hensley contends that the trial court correctly found Mr. Spires to be statutorily disqualified from pursuing this claim due to the outstanding child support arrearages he owed. Upon our thorough review of the record and applicable authorities, we conclude that although Mr. Spires is statutorily disqualified from recovering proceeds from this wrongful death action until his child support obligations are paid, he is not statutorily disqualified from commencing and maintaining this action.

## A. Priority of Surviving Spouse

It is well settled in Tennessee that "[t]he legislature enacted the wrongful death statutes to create a civil action for the wrongfully inflicted injury that resulted in death before a judgment was recovered." *Foster v. Jeffers*, 813 S.W.2d 449, 452 (Tenn. Ct. App. 1991) ("The purpose of the wrongful death statutes is to keep the decedent's cause of action from dying with the decedent."). Because the action belongs to the decedent, "the proceeds from a wrongful death action become personal property of the deceased and the court will look to the statutes on distribution of personalty as a guide." *See id.* at 452 (explaining also that "[t]he proceeds from a wrongful death action cannot pass under the will of the deceased."). Therefore, although a wrongful death action may have more than one beneficiary, "the right of action itself remains one that is 'single, entire[,] and indivisible.'" *See Kline v. Eyrich*, 69 S.W.3d 197, 207 (Tenn. 2002) (quoting *Wheeler v. Burley*, No. 01A01-9701-CV-00006, 1997 WL 528801 at *3 (Tenn. Ct. App. Aug. 27, 1997)).

As this Court has explained, "[t]he wrongful death statutes taken together set forth the priorities among those persons entitled by T.C.A. § 20-5-107 to bring a wrongful death action." *Foster*, 813 S.W.2d at 451. "All of the wrongful death statutes must be construed with reference to one another." *Id.* Regarding the succession of the right to initiate a wrongful death action on behalf of a decedent, Tennessee Code Annotated § 20-5-106(a) (Supp. 2015) provides:

(a)     The right of action that a person who dies from injuries received from another, or whose death is caused by the wrongful act,

6

omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin; to the person's personal representative, for the benefit of the person's surviving spouse or next of kin; to the person's natural parents or parent or next of kin if at the time of death decedent was in the custody of the natural parents or parent and had not been legally surrendered or abandoned by them pursuant to any court order removing such person from the custody of such parents or parent; or otherwise to the person's legally adoptive parents or parent, or to the administrator for the use and benefit of the adoptive parents or parent; the funds recovered in either case to be free from the claims of creditors.

*See also* Tenn. Code Ann. § 20-5-110(a) (Supp. 2015) ("A suit for the wrongful killing of the spouse may be brought in the name of the surviving spouse for the benefit of the surviving spouse and the children of the deceased . . . ."). "The party who has the prior and superior right above all others to bring a wrongful death action is the surviving spouse." *Foster*, 813 S.W.2d at 451 (citing Tenn. Code Ann. §§ 20-5-106(a), 20-5-110); *see also In re Estate of Dobbins*, 987 S.W.2d 30, 36 (Tenn. Ct. App. 1998).

Regarding the prosecution of a wrongful death action by a surviving spouse or next of kin, Tennessee Code Annotated § 20-5-107(a) (Supp. 2015) further provides:

(a)     The action may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin; also, without the consent of the personal representative, either may use the personal representative's name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless the personal representative signs the prosecution bond in an individual capacity.

As our Supreme Court has explained:

Because multiple actions may not be brought to resolve a single wrongful death claim, the statutes carefully prescribe the priority of those who may assert the action on behalf of the decedent and any other

beneficiaries. In a dispute between the surviving spouse and the children of the decedent as to who may maintain the action, the surviving spouse clearly has "the prior and superior right above all others . . . ." *Foster v. Jeffers,* 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991); *see also* Tenn. Code Ann. § 20-5-107 (1994); *Busby v. Massey,* 686 S.W.2d 60, 62 (Tenn. 1984). In fact, the children of the deceased may maintain an action only if the decedent is not survived by a spouse or if the surviving spouse has waived his or her right of priority. *See* Tenn. Code Ann. § 20-5-107; *Foster,* 813 S.W.2d at 453. Consequently, once the surviving spouse has asserted his or her right or priority, the statutes give to the surviving spouse complete "control over the right of action until he or she waives that right." *Estate of Baker ex rel. Baker v. Maples,* 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999).

As part of this right of control over the action, the surviving spouse is entitled to control the litigation and to hire the attorney or attorneys needed to prosecute the action. More importantly, however, the surviving spouse also has the discretion either to litigate the claim or to settle it in a manner that is binding upon the children. *See* Tenn. Code Ann. § 20-5-110(b). Therefore, absent proof of bad faith or lack of diligence in representing their interests, *see Busby,* 686 S.W.2d at 63, the children of a decedent simply have no right to representation under these circumstances except through the surviving spouse. Although the surviving spouse may consent to other assistance in litigating or settling the wrongful death claim, he or she is under no statutory obligation to do so.

*Kline*, 69 S.W.3d at 207. This Court has explained that "[t]he administrator's rank in the group of persons who have priority to the right to bring a wrongful death action varies according to the beneficiaries." *Foster*, 813 S.W.2d at 452 ("In any event, an adult beneficiary has priority over an administrator in prosecuting his or her own action.").

In the instant action, it is undisputed that at the time of the Decedent's death, she was legally married to Mr. Spires and had one child. A decedent's right of action passes to the decedent's successor upon the death of the decedent. *See* Tenn. Code Ann. § 20-5-106(a); *see, e.g., Wheeler v. Burley*, No. 01A01-9701-CV-00006, 1997 WL 528801 at *3 (Tenn. Ct. App. Aug. 27, 1997) ("When [a decedent] dies from these injuries this single, entire and indivisible cause of action does not abate, but passes first to his surviving spouse."). Therefore, barring any statutory disqualification, the Decedent's right of action passed to Mr. Spires, as the surviving spouse, upon the Decedent's death on October 1, 2010.[4] In the event that no statutory disqualification applies, the proceeds

---

[4] In this case, the date of the Decedent's fatal injuries and her death were the same. This Court previously has held that when a decedent died as the result of injuries occurring prior to the date of death, the

8

from a wrongful death action initiated by Mr. Spires would be distributed one-half to Mr. Spires as the surviving spouse and one-half to the Child as the Decedent's sole surviving issue. *See* Tenn. Code Ann. § 31-2-104 (2015) (setting forth the intestate share of a surviving spouse and heirs); *Foster*, 813 S.W.2d at 452-53 (explaining that the distribution of proceeds from a wrongful death action is governed according to the intestacy statute).

## B. Effect of Surviving Spouse's Child Support Obligations

The trial court, however, found that the statutory exception set forth in Tennessee Code Annotated § 20-5-107(b) applied to disqualify Mr. Spires from filing this action and participating in the settlement proceeds. The court thereby dismissed Mr. Spires entirely as a plaintiff and substituted Capt. Hensley in his capacity as the Child's adoptive father. Mr. Spires contends that Tennessee Code Annotated § 20-5-107(b) operates to require him to pay his child support obligations from his one-half portion of the wrongful death proceeds before he may recover on his own behalf but does not bar him from maintaining the lawsuit. Insofar as the application of subsection -107(b) goes, we agree with Mr. Spires.

Tennessee Code Annotated § 20-5-107(b) (Supp. 2015) provides:

> (b)     In no event shall a parent be permitted to recover through an action commenced pursuant to subsection (a) until all child support arrearages, together with interest on the child support arrearages, at the legal rate of interest computed from the date each payment was due, have been paid in full to the parent ordered to receive the support or to the parent's estate if deceased.

The General Assembly amended Tennessee Code Annotated § 20-5-107 to add subsection (b) effective May 9, 1994. *See* 1994 Pub. Acts, Ch. 939 § 1 (H.B. 1704). By the same legislative action, the General Assembly also amended Tennessee Code Annotated § 31-2-105 to add a similar subsection (b) concerning intestate succession:

> (b)     In no event shall a parent be permitted to inherit through intestate succession until all child support arrearages together with interest thereon at the legal rate of interest computed from the date each

---

decedent's cause of action vested on the date of injury and was then passed to the decedent's successors on the date of death. *See Rogers v. Donelson-Hermitage Chamber of Commerce*, 807 S.W.2d 242, 244-45 (Tenn. Ct. App. 1990) (concluding that Tennessee Code Annotated § 20-5-106(a) "does not create a new cause of action for the plaintiffs, but simply preserves [the decedent's] right of action which would otherwise be extinguished by her death.").

payment was due have been paid in full to the parent ordered to receive support or to the parent's estate if deceased.

See 1994 Pub. Acts, Ch. 939 § 2 (H.B. 1704).

The issue of whether Tennessee Code Annotated § 20-5-107(b) operates to bar a surviving spouse with any outstanding child support obligation from commencing and maintaining a wrongful death action is a matter of first impression. The issue was raised in relation to a petition for distribution of a wrongful death settlement by the appellant in *In re Estate of Dobbins*, but this Court found that the status of the appellant in relation to the decedent was dispositive of the appeal. *See In re Estate of Dobbins*, 987 S.W.2d at 34-37. In *Dobbins*, this Court concluded that the minor decedent's grandmother was not entitled to recover any wrongful death proceeds because the decedent's grandmother had never adopted the decedent and the decedent's parents had not surrendered their parental rights or had those rights terminated. *Id.* at 36-37. The grandmother had raised the issue of whether the trial court erred by declining to dismiss the parents' petition to recover from the wrongful death settlement proceeds due to their lack of financial support of the decedent, pursuant to Tennessee Code Annotated § 20-5-107(b). *Id.* at 32. Having determined that the grandmother was not entitled to recover, this Court did not address the application of subsection -107(b) to the commencement and maintenance of a wrongful death action. *Id.* at 36-37.

In the instant action, the trial court in its final judgment found that Mr. Spires had "never contributed any money toward [the Child's] support and maintenance" and owed "substantial arrearages and court-ordered child support payments for his other children with other women." Mr. Spires does not dispute the trial court's findings regarding his child support obligations. The court then considered Tennessee Code Annotated §§ 20-5-107(b) and 31-2-105(b), concluding that, taken together, the plain language of these subsections "forbid[s] both inheritance and recovery in a wrongful death action until all child support arrearages have been paid." We agree with the trial court's analysis in this regard.

We also agree with the trial court's initial analysis of the plain and unambiguous meaning of "until" as it is employed in Tennessee Code Annotated §§ 20-5-107(b) and 31-2-105(b). *See In re Estate of Tanner*, 295 S.W.3d at 614 ("When a statute is clear, we apply the plain meaning without complicating the task."). The trial court stated in pertinent part:

> In the context of both wrongful death proceeds and inheritance, the court finds the word "until" to be clear and unambiguous, and its plain and normal meaning is that no person shall recover proceeds from a wrongful

10

death action or inherit from a decedent before that person has satisfied his or her child support obligations in full.

We do not agree, however, with the trial court's subsequent conclusion that Tennessee Code Annotated § 20-5-107(b) operates to preclude Mr. Spires's right as a surviving spouse to initiate and maintain a wrongful death action. As the trial court initially noted, subsection -107(b) provides that no parent shall be permitted to <u>recover</u> through a wrongful death action until all child support obligations are paid. Subsection -107(b) does not prohibit a parent with outstanding child support obligations from commencing or maintaining a wrongful death action. Likewise, Tennessee Code Annotated § 31-2-105(b) provides that no parent shall be permitted to <u>inherit</u> through intestate succession until all child support obligations, plus applicable interest, are paid. We determine that within the context of a wrongful death action, such a prohibition on inheritance means that no parent shall be permitted to recover his or her portion of the proceeds from a wrongful death action until his or her child support obligations, plus applicable interest, are paid. *See generally Foster*, 813 S.W.2d at 453 ("The proceeds from a wrongful death action are distributed as if they were personal property.").

In dismissing Mr. Spires from this action, the trial court did not address the meaning of "recover" as it is employed in Tennessee Code Annotated § 20-5-107(b). The term is not directly defined within the wrongful death statutes. *See* Tenn. Code Ann. §§ 20-5-103 to 20-5-113 (2009 & Supp. 2015); *see, e.g., Shockley v. Mental Health Coop., Inc.,* 429 S.W.3d 582, 591 (Tenn. 2013) (defining a term according to its "plain and ordinary" meaning, "including dictionary definitions," only after determining that the statute at issue did not define the term). However, in delineating "damages recoverable in wrongful death," Tennessee Code Annotated § 20-5-113 (Supp. 2015) does distinguish between the initiation of a wrongful death lawsuit, pursuant to Tennessee Code Annotated §§ 20-5-106 and 20-5-107, and the suing party's "right to recover" damages. Tennessee Code Annotated § 20-5-113 provides:

> **Damages recoverable in wrongful death. –** Where a person's death is caused by the wrongful act, fault or omission of another and suit is brought for damages, as provided for by §§ 20-5-106 and 20-5-107, the party suing shall, if entitled to damages, have the right to recover for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.

*See Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 598 (Tenn. 1999) ("Hence, survivors of the deceased may recover damages for *their* losses suffered as a result of the

death as well as damages sustained by the deceased from the time of injury to the time of death.") (emphasis in original). *See also Gilliam ex rel. Gilliam v. Calcott,* Nos. E1999-02365-COA-R3-CV & 03A01-9904-CV-00133, 2000 WL 336503 at *2 (Tenn. Ct. App. Mar. 30, 2000) ("Obviously, there is a critical distinction between the right to bring the [wrongful death] action, on the one hand, and the right to share in the proceeds of a settlement or judgment, on the other."). We note also the common legal definition of "recover" as "[t]o obtain damages or other relief; to succeed in a lawsuit or other legal proceeding." BLACK'S LAW DICTIONARY 1302 (8th ed. 2004).

We determine that Tennessee Code Annotated § 20-5-107(b) operates to prohibit Mr. Spires's recovery of his one-half of the settlement until his child support obligations are paid but does not operate to disqualify him from commencing and maintaining this wrongful death action. Moreover, we determine that, barring any other statutory disqualification, Tennessee Code Annotated § 20-5-107(b) operates to require payment of Mr. Spires's child support arrearages and statutory interest from his one-half portion of the wrongful death settlement.

C. Tennessee Code Annotated § 20-5-107(c)

The trial court did not address the effect of Tennessee Code Annotated § 20-5-107(c) (Supp. 2015). Subsection -107(c), which was enacted by the General Assembly effective April 11, 2003,[5] *see* 2003 Pub. Acts, Ch. 25 § 1 (H.B. 1262), provides:

(c) Notwithstanding any law to the contrary, a parent who has intentionally refused or neglected to pay any support for a child for a two-year period, or for the life of the child, whichever is less, when subject to a court order requiring the payment of child support and who has intentionally refused or neglected to contact the child or exercise visitation during such period, shall not be permitted to recover through an action commenced pursuant to subsection (a) and § 20-5-106.

Whether Tennessee Code Annotated § 20-5-107(c) operates to bar Mr. Spires from pursuing this action was first raised as an issue by Ms. Ogle in her motion to intervene and dismiss Mr. Spires. Ms. Ogle and Capt. Hensley subsequently raised the effect of

---

[5] At trial and in Mr. Spires's brief on appeal, there appears to have been some confusion regarding whether Tennessee Code Annotated § 20-5-107 was amended to include the current subsection (c) in 2003 or 2011. This distinction was potentially important because the right to bring the wrongful death action vested prior to 2011 on the date of the Decedent's fatal injuries and death, October 1, 2010. We note that having been enacted through the 2003 amendment to Tennessee Code Annotated § 20-5-107, subsection (c) would be applicable to this action if its elements were proven.

subsection -107(c) in their joint motion to allow Capt. Hensley to intervene and dismiss Mr. Spires as a party. In his principal brief on appeal, Mr. Spires, apparently out of an abundance of caution, asserts that Capt. Hensley cannot rely on subsection -107(c) to support the trial court's dismissal of Mr. Spires from this action. In response, Capt. Hensley asserts that subsection -107(c) operates to support Mr. Spires's dismissal. We conclude that inasmuch as Capt. Hensley failed to present evidence regarding whether Mr. Spires's failure to pay child support arrearages was intentional and inasmuch as the trial court did not address subsection -107(c), Capt. Hensley cannot now rely on subsection -107(c) to support the dismissal of Mr. Spires as a plaintiff or to bar his recovery from the proceeds of this action.

In support of his argument that Mr. Spires's failure to pay child support on behalf of the Child was intentional, Capt. Hensley relies on the August 2012 Default Judgment and Final Decree of Adoption entered by the Blount County Chancery Court and admitted as an exhibit during trial in this action. The Chancery Court terminated Mr. Spires's parental rights to the Child upon finding clear and convincing evidence of the statutory grounds of abandonment through willful failure to visit the Child and willful failure to support the Child during the four months preceding the filing of the termination petition on March 13, 2012. *See* Tenn. Code Ann. §§ 36-1-102(1)(A), 36-1-113. In contrast, the time period at issue in Tennessee Code Annotated § 20-5-107(c) is two years rather than four months.

Furthermore, although it is well settled that a parent is expected to understand that his child requires financial support even in the absence of a court order to pay support, *see* Tenn. Code Ann. § 36-1-102(1)(H) (2015), Tennessee Code Annotated § 20-5-107(c) limits its applicability to instances when the parent has been "subject to a court order requiring the payment of child support," *see* Tenn. Code Ann. § 20-5-107(c). It is undisputed that Mr. Spires was subject to court-ordered child support obligations only for his children born to women other than the Decedent, meaning that even if the difference in time periods were not an issue, Capt. Hensley could not rely on the Chancery Court's finding of willful failure to support the Child as proof that the Decedent had intentionally failed to support the children for whom he owed arrearages.

The parties stipulated to a total of $71,932.86 in child support arrearages that Mr. Spires owed on behalf of his children by women other than the Decedent. Without objection, Capt. Hensley presented an exhibit consisting of email correspondence from Ray Johnson, identified by Capt. Hensley's counsel as the "child support attorney" for the applicable judicial district. In his email message, Mr. Johnson delineated the specific amounts owed in each court case.[6] Capt. Hensley's counsel also read into the record

---

[6] Capt. Hensley's counsel also noted that Mr. Johnson had been subpoenaed and was available to testify if needed.

deposition testimony by Mr. Spires in which Mr. Spires admitted that he had never paid child support on behalf of the Child; had been employed as a landscaper for a total of seventeen years; was employed at the time of the deposition by Denso Manufacturing Tennessee, Inc.; and was employed by Expert Lawn Care at the time of the November 2010 custody hearing involving the Child. Mr. Spires did not testify at trial. Within the deposition testimony read into the record, Mr. Spires was not questioned regarding the time periods in which he had amassed the child support arrearages for his other children or his ability to pay those arrearages.

Moreover, the trial court made no findings regarding Mr. Spires's ability to pay child support or the intentionality of his failure to do so. "'A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child.'" *In re R.L.F.*, 278 S.W.3d 305, 320 (Tenn. Ct. App. 2008), *overruled on other grounds by In re Kaliyah S.* 455 S.W.3d 533 (Tenn. Jan. 22, 2015) (quoting *In re M.J.M., Jr.*, No. M2004-02377-COA-R3-PT, 2005 WL 873302 at *8 n.17 (Tenn. Ct. App. Apr. 14, 2005)). Capt. Hensley's partial reliance on Tennessee Code Annotated § 20-5-107(c) to support the dismissal of Mr. Spires from this action is misplaced.

### D. Alleged Abandonment of the Decedent Prior to Death

In Ms. Ogle's and Capt. Hensley's respective motions to dismiss Mr. Spires from this action, they also alleged that he was statutorily disqualified by operation of Tennessee Code Annotated §§ 20-5-106(c), 20-5-107(e), and 20-5-110(c) because he had allegedly abandoned the Decedent prior to the Decedent's death. Mr. Spires argued in response, *inter alia*, that these statutory subsections were inapplicable because they were added to the wrongful death statutes through a 2011 legislative amendment, *see* 2011 Pub. Acts, Ch. 366 §§ 1-3 (H.B. 789) (effective May 30, 2011), while Mr. Spires's right to this action vested at the time of the Decedent's death on October 1, 2010. At trial, Capt. Hensley acknowledged that the statutory subsections regarding abandonment did not apply due to their enactment following the Decedent's death. Capt. Hensley's counsel stated for the record, however, that he was not waiving the abandonment issue. On appeal, Capt. Hensley requests that this Court retroactively apply Tennessee Code Annotated §§ 20-5-106(c), 20-5-107(e), and 20-5-110(c). Upon our thorough review, we decline to do so.

Tennessee Code Annotated § 20-5-106(c) (Supp. 2015) provides:

(c)(1) Notwithstanding any other law to the contrary, the right to institute and the right to collect any proceeds from a wrongful death action granted by this section to a surviving spouse shall be waived, if the children or next of kin establish the surviving spouse has abandoned

14

the deceased spouse as described in § 36-4-101(a)(13) or otherwise willfully withdrawn for a period of two (2) years.

(2) If the period of two (2) years has passed since the time of abandonment or willful withdrawal, then there is created a rebuttable presumption that the surviving spouse abandoned the deceased spouse for purposes of this section.

(3) In an action under this section, the child or next of kin shall serve the surviving spouse with process as provided in the [Tennessee] [R]ules of [C]ivil [P]rocedure or by constructive service as may otherwise be provided by law.

Likewise, Tennessee Code Annotated §§ 20-5-107(e) and 20-5-110(c) contain identical language. Tennessee Code Annotated § 36-4-101(a)(13) (Supp. 2015), cross-referenced above, provides as a ground for divorce that "[t]he husband or wife has abandoned the spouse or turned the spouse out of doors for no just cause, and has refused or neglected to provide for the spouse while having the ability to so provide."

This Court previously has held that the right to recover through a wrongful death settlement is a vested right that cannot constitutionally be affected by retroactive application of a statute. *See Rogers*, 807 S.W.2d at 244-45 (denying the appellant's request for retroactive application of a statute to a wrongful death action as unconstitutional and concluding that "[t]he law in effect at the time of the injuries which later resulted in [the decedent's] death should be applied to establish the liability for those injuries."); *Cliburn v. Sullivan*, No. M2003-02563-COA-R3-CV, 2005 WL 292360 at *4 (Tenn. Ct. App. Feb. 7, 2005) (holding that when a parent's right to recover through a wrongful death settlement on behalf of his child had vested prior to enactment of Tenn. Code Ann. § 20-5-107(c), application of subsection -107(c) would have "affect[ed] a vested right and thus [could] not be applied retroactively.").[7] As this Court has explained:

Article I, § 20 of the Tennessee Constitution provides that "no retrospective law, or law impairing the obligations of contract, shall be made." The Tennessee Supreme Court has interpreted this constitutional provision to prohibit laws that "take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed."

---

[7] The plaintiff mother in *Cliburn* did not raise the issue of whether Tennessee Code Annotated § 20-5-107(b), which was in effect at the time of the minor decedent's death, operated to bar the father's recovery. *See Cliburn*, 2005 WL 2922360.

15

*Morris v. Gross,* 572 S.W.2d 902, 907 (Tenn. 1978). The court also defined a "vested right" as one "which it is proper for the state to recognize and protect and of which [an] individual could not be deprived arbitrarily without injustice." *Doe v. Sundquist,* 2 S.W.3d 919, 923 (Tenn. 1999) (quoting *Morris,* 572 S.W.2d at 905.) Furthermore, "It is well settled that a vested right of action is as much property as are tangible things and is protected from arbitrary legislation, whether such right of action be based upon the law of contract or upon other principles of the common law." *Morris,* 572 S.W.2d at 905.

*Cliburn*, 2005 WL 292360 at *3.

Having determined that Mr. Spires's right to recover wrongful death proceeds through this action vested prior to enactment of Tennessee Code Annotated §§ 20-5-106(c), 20-5-107(e), and 20-5-110(c), we further determine that these statutory subsections may not be applied retroactively to the case at bar.[8] We conclude that the trial court erred by finding Mr. Spires to be statutorily disqualified from initiating and maintaining this wrongful death action. We therefore reverse the trial court's dismissal of Mr. Spires as the original plaintiff.

## V. Distribution of Wrongful Death Proceeds

Upon dismissing Mr. Spires from this action, the trial court awarded the entire $100,000.00 settlement to the Child and instructed the court clerk to disburse the funds paid by Tennessee Mutual to Capt. Hensley in trust for the use and benefit of the Child. We previously have determined that the trial court erred by dismissing Mr. Spires from this lawsuit and that the plain language of Tennessee Code Annotated § 20-5-107(b) operates to require that Mr. Spires's existing court-ordered child support arrearages and interest be paid before he may recover any proceeds. The Child, as the Decedent's only surviving issue, is entitled to one-half of the settlement proceeds, or $50,000.00. *See* Tenn. Code Ann. § 31-2-104; *Foster*, 813 S.W.2d at 452-53. The remaining one-half of the proceeds, or $50,000.00, is ostensibly Mr. Spires's share as the surviving spouse. *See id.* However, pursuant to Tennessee Code Annotated § 20-5-107(b), Mr. Spires may not recover any of the proceeds for his own benefit "until all child support arrearages, together with interest on the child support arrearages, at the legal rate of interest computed from the date each payment was due, have been paid in full to the parent ordered to receive the support or to the parent's estate if deceased." Mr. Spires's

---

[8] We also note that Capt. Hensley alleged that Mr. Spires had abandoned the Decedent on April 12, 2009, approximately eighteen months before her death and below the minimum time period of two years provided in the 2011 amendment to the wrongful death statutes.

$50,000.00 portion of the settlement must therefore be paid toward his child support arrearages.

The record before us contains only limited information regarding the total child support arrearages Mr. Spires owed at the time of trial in four unrelated cases involving his children other than the Child. As Mr. Spires acknowledges, his entire portion of the wrongful death settlement will be consumed by his child support arrearages. We remand for a hearing to address the proper distribution of Mr. Spires's portion of the proceeds to the mothers previously ordered to receive child support from Mr. Spires or to their respective estates if deceased. At this hearing, the trial court may enlist the assistance of a representative from Tennessee Child Support Enforcement Services. The court should then enter an order directing payment through the Child Support Receipting Unit. We emphasize that the mothers of Mr. Spires's other children are not proper parties to this action and should not be joined as parties for any reason. *See* Tenn. Code Ann. § 20-5-106(a).

We are mindful of the trial court's finding that only the Child, as the Decedent's heir, should be granted recovery from the Decedent's wrongful death action, but we cannot agree. Although the result may seem harsh in light of Mr. Spires's acknowledged separation from the Decedent at the time of her death and Mr. Spires's acknowledged failure to support the Child, Mr. Spires was the Decedent's surviving spouse and thus also her heir. According to the plain language of the statute, "all" of the child support arrearages owed by Mr. Spires, together with interest, must be paid "to the parent ordered to receive the support." *See* Tenn. Code Ann. § 20-5-107(b). It is undisputed that Mr. Spires was under no court order to pay support on behalf of the Child. He was under court orders to pay support on behalf of his children by four other mothers. Mr. Spires's one-half portion of the wrongful death settlement will now benefit his other children while the Child receives the one-half portion due him as the Decedent's only child. *See* Tenn. Code Ann. § 31-2-104.

## VI. Adoptive Father as Intervening Plaintiff

Mr. Spires also contends that the trial court erred by finding that Capt. Hensley had the right to pursue this action as an intervening plaintiff acting on behalf of the minor child. Capt. Hensley contends that Mr. Spires waived this issue on appeal because he did not raise it before the trial court. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court."). Upon our thorough review of the record, we determine that Mr. Spires did raise this issue before the trial court and may do so on appeal. Moreover, having determined that the trial court erred by dismissing Mr.

17

Spires as a plaintiff, we further determine that the court erred by substituting Capt. Hensley as an intervening plaintiff.

Mr. Spires originally filed the complaint in this action on behalf of the Decedent, the Child, and himself. Mr. Spires does not dispute that in April 2012, he agreed to Ms. Ogle's request that she be allowed to join as an intervening plaintiff. *See Kline*, 69 S.W.3d at 207 ("Although the surviving spouse may consent to other assistance in litigating or settling the wrongful death claim, he or she is under no statutory obligation to do so."). In November 2013, Mr. Spires filed a motion to dismiss Ms. Ogle from the action on the basis of alleged inaction in prosecuting the case. Although the record contains no order joining Ms. Ogle as an intervening plaintiff, Mr. Spires in his motion appeared to regard Ms. Ogle as having been joined to the action. Ms. Ogle and Capt. Hensley, acting through the same counsel, subsequently filed a joint response to Mr. Spires's motion in March 2014, requesting, *inter alia*, that Capt. Hensley be joined as a second intervening plaintiff.

At the beginning of trial on June 3, 2014, the following exchange ensued during opening statements:

| | |
|---|---|
| Capt. Hensley's Counsel: | Your Honor, please, I'm not here – I'm not sure exactly procedurally what we're here on. I think it all sort of blends together, though, as far as the actual resolution of the issues go. We were here just a short while ago on my petition for Captain Hensley, the child's adoptive father, to intervene. |
| | You, in open court, announced that you had reviewed all the documents and that he would, in fact, be allowed to intervene and be substituted. There's been no order put down on that, because we subsequently found out, within an hour, I guess, after the hearing, that the notice of that hearing had been sent to counsel to a wrong address. The name of the street was wrong. |
| The Court: | Okay. |
| Capt. Hensley's Counsel: | They didn't know we were here. |

18

| The Court: | Okay. |
| --- | --- |
| Capt. Hensley's Counsel: | But whether or not I think Mr. Hensley is allowed to intervene and be substituted as the plaintiff's representative I think is all tied up in all of the same factors that will resolve the issues that we're here on today. |

Thus, according to counsel for Ms. Ogle and Capt. Hensley, Mr. Spires had not received proper notice of a prior hearing during which the trial court had initially ruled that Capt. Hensley would be allowed to join the action as an intervening plaintiff. Accordingly, the trial court did not enter an order to this effect prior to trial. No transcript of the prior hearing is in the record.

As Captain Hensley's counsel indicated during his statement at trial quoted above, he and Mr. Spires's counsel proceeded to argue their positions regarding Mr. Spires's ability to prosecute this action. Tennessee Farmers presented its willingness to tender the insurance policy limit of $100,000.00, and all parties agreed to entry of this settlement amount. Throughout the trial, Mr. Spires maintained that he was the party with the priority right to prosecute the wrongful death action on behalf of himself and the Child. Mr. Spires at no time consented to Capt. Hensley's request to be joined as an intervening plaintiff. At the close of trial, the court took the matter under advisement. The court entered its final judgment on March 12, 2015, *inter alia*, dismissing Mr. Spires as a plaintiff and substituting Capt. Hensley in place of Ms. Ogle as an intervening plaintiff. We determine that Mr. Spires has not waived this issue on appeal. *See* Tenn. R. App. P. 3(e) (providing that except for certain issues arising from a jury trial not applicable here, "[a]n appeal as of right may be taken without moving in arrest of judgment, praying for an appeal, entry of an order permitting an appeal or compliance with any other similar procedure.").

The trial court in its final judgment stated the following in pertinent part:

Mrs. Ogle was appointed [the Child's] guardian by the Monroe County Juvenile Court and appointed as administrator of Ms. Spires' estate before this action was filed. Mrs. Ogle initially moved to intervene in this cause, as [the Child's] guardian and as administrator of Ms. Spires' estate. Later, Capt. Hensley, M.D., adopted [the Child] and moved to intervene in Mrs. Ogle's place as [the Child's] adoptive father, and therefore, the person entitled to represent his son in this case. The court finds that both Mrs. Ogle and/or Capt. Hensley are entitled to prosecute the claim on behalf of

[the Child]. Pursuant to *Tenn. Code Ann.* §34-1-102(a),[9] Capt. Hensley is [the Child's] natural guardian[], and is charged with the care, management and expenditure of [the Child's] estate. It follows from the Court's foregoing findings that Mr. Spires has been statutorily disqualified, that he is not a proper party to this cause, and the Court so finds.

We recognize that upon concluding that Mr. Spires was statutorily disqualified from pursuing the wrongful death action, the trial court properly joined a plaintiff who could pursue the action on behalf of the minor Child. *See* Tenn. Code Ann. § 20-5-107(a).[10] However, having determined that the trial court's dismissal of Mr. Spires was in error, we conclude that Mr. Spires, as the surviving spouse, is the proper party to prosecute the action. *See Kline*, 69 S.W.3d at 207 ("]T]he children of the deceased may maintain an action only if the decedent is not survived by a spouse or if the surviving spouse has waived his or her right of priority."); *Foster*, 813 S.W.2d at 452 ("[A]n adult beneficiary has priority over an administrator in prosecuting his or her own action."). The children of a decedent are passive beneficiaries of a wrongful death action initiated by the decedent's surviving spouse. *See Kline*, 69 S.W.3d at 206 (holding that when the surviving spouse and adult children of the decedent filed separate wrongful death actions, only the surviving spouse's action could be maintained and that "the children must be considered, as a matter of law, to be passive beneficiaries of the wrongful death proceeds."). A surviving spouse, barring waiver or statutory disqualification, has the statutory right to reach a settlement on behalf of himself and the decedent's surviving children. *See* Tenn. Code Ann. § 20-5-110(b) (Supp. 2015) ("The surviving spouse may effect a bona fide compromise in such a suit or right of action and may execute a valid release that shall be binding upon all the children of the deceased or next of kin of the deceased."); *Kline*, 69 S.W.3d at 207 ("T]he surviving spouse also has the discretion either to litigate the claim or to settle it in a manner that is binding upon the children."). We therefore reverse the trial court's joinder of Capt. Hensley as an intervening plaintiff.

---

[9] Tennessee Code Annotated § 34-1-102(a) (2015) provides in relevant part: "Parents are the joint natural guardians of their minor children, and are equally and jointly charged with their care, nurture, welfare, education and support and also with the care, management and expenditure of their estates."

[10] Although not applicable to this action, we note that the General Assembly included the following provision when enacting Tennessee Code Annotated § 20-5-107(d) in 2011:

> (4) In no event shall any action for wrongful death abate, or the statute of limitations bar, an action solely as a result of a finding the surviving spouse's rights are waived. Instead the court shall substitute the proper party.

*See* 2011 Pub. Acts, Ch. 366 § 2 (H.B. 789).

## VII. The Child's Funds in Trust

In concluding that the trial court erred by joining Capt. Hensley as an intervening plaintiff, we emphasize that Capt. Hensley need not be a plaintiff in this action in order to act, in his capacity as adoptive father, as a trustee for the Child's funds placed in trust. As the trial court noted in its June 30, 2014 agreed order, all involved parties, including Mr. Spires, agreed to the $100,000.00 settlement and absolved the Simpsons from any further liability. Tennessee Mutual subsequently tendered $100,000.00 to the trial court clerk pending further order pursuant to Tennessee Rule of Civil Procedure 67.01. The Child, as a passive beneficiary of the Decedent, is entitled to his one-half share of the settlement proceeds. Pursuant to Tennessee Code Annotated § 20-5-106(b) (Supp. 2015), the trial court may in its discretion and if found in the best interest of the Child, authorize that the funds recovered on behalf of the Child "be added to any trust or trusts established for the benefit of the beneficiary . . . ."

Regarding the disbursement of funds to the Child in trust, the trial court stated the following in its final judgment:

> The issues of liability and damages were settled among the parties and approved by the Court order issued in this cause on June 30, 2014, and after this Order has lain unappealed for thirty days or a mandate has issued to the trial court following appeal therefrom, the Clerk shall disburse the funds held in the registry of the Court to Capt. Dana Trent Hensley, Jr., M.D., ***in trust***, for the use and benefit of [the Child], without bond, in accordance with the Court's finding pursuant to *Tenn. Code Ann.* §34-1-104(b)[11] that such order would best serve [the Child's] welfare, subject to the provisions and restrictions of the Tennessee Uniform Trust Act, *Tenn. Code Ann.* §35-15-101 *et seq.*, including but not limited to, the Tennessee Uniform Principal and Income Act and Tennessee Uniform Prudent Investor Act of 2002, incorporated therein, the corpus and accumulated income to be distributed to [the Child] upon his attaining the age of 18 years . . . .

(Emphasis in original.) Mr. Spires does not dispute the trial court's action in directing that the Child's portion of the proceeds be placed in trust under the management of Capt. Hensley as the Child's adoptive father and guardian. Moreover, we determine that the

---

[11] Tennessee Code Annotated § 34-1-104(b) provides, *inter alia*, for delivery of a minor child's property valued at less than $20,000 directly to the child's guardian if the court finds such delivery to be in the child's best interest. We note that the Child's portion of the judgment in this action is greater than $20,000.00. However, any error in the trial court's reliance on this statute is harmless inasmuch as the court directed that the funds be placed in trust for the Child. *See* Tenn. Code Ann. § 20-5-106(b).

trial court did not abuse its discretion in finding that it was in the Child's best interest to do so. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) ("A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'") (quoting *State v. Shirley,* 6 S.W.3d 243, 247 (Tenn. 1999)). We therefore affirm the trial court's distribution of the Child's portion of the proceeds to Capt. Hensley in trust for the benefit of the Child with the modification that the Child's portion consists of one-half the total settlement, or $50,000.00.

## VIII. Conclusion

For the reasons stated above, we reverse the trial court's dismissal of the surviving spouse as a party and the court's substitution of the adoptive father as an intervening plaintiff. We remand for collection of costs below and distribution of the settlement proceeds as follows: (1) one-half, or $50,000.00, toward satisfaction of Mr. Spires's child support arrearages with interest, pursuant to Tennessee Code Annotated § 20-5-107(b), and (2) one-half, or $50,000.00, to the Child in trust with Capt. Hensley acting as trustee, as provided in the trial court's final judgment. Upon remand, the trial court shall conduct a hearing to address the proper distribution of Mr. Spires's portion of the proceeds to the mothers previously ordered to receive child support from Mr. Spires or to their respective estates if deceased. At this hearing, the trial court may enlist the assistance of a representative from Tennessee Child Support Enforcement Services. The trial court should then enter an order directing payment through the Child Support Receipting Unit. We again emphasize that the mothers of Mr. Spires's other children are not proper parties to this action and should not be joined as parties for any reason. *See* Tenn. Code Ann. § 20-5-106(a). We affirm the trial court's judgment in all other respects. Costs on appeal are taxed to the appellee, Capt. Dana Trent Hensley, Jr., M.D.

_____
THOMAS R. FRIERSON, II, JUDGE